**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ERIC FROST and DAWN FROST,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**SUFFOLK CONSTRUCTION COMPANY INC., and SUNBLET RENTALS, INC.,**<br><br>**Defendants,**<br><br>**v.**<br><br>**ALBAN TRACTOR, CO., INC. and VYNORIUS PILEDRIVING, INC.,**<br><br>**Third-Party Defendants.** | **Case No. 18-cv-11578-DJC** |

**MEMORANDUM AND ORDER**

**CASPER, J.** **December 15, 2020**

## I. Introduction

Plaintiffs Eric Frost ("Frost") and Dawn Frost (together, "the Frosts") filed this lawsuit against Defendants Suffolk Construction Company, Inc. ("Suffolk Construction") and Sunbelt Rentals Inc. ("Sunbelt"), alleging negligence, breach of warranty and loss of consortium related to allegations that a pile driver located at a construction site failed and injured Frost. Sunbelt in turn sued Alban Tractor, Co. Inc. ("Alban Tractor") and Vynorius Piledriving, Inc ("Vynorius") (collectively, "third-party Defendants") for common law indemnity (Count I and Count IV, respectively). D. 23. Sunbelt also brought a contribution claim against Alban Tractor (Count II), as well as a defense and contractual indemnification claim (Count III) and breach of contract claim

(Count V) against Vynorius. Id. Now before the Court are several motions by and between Sunbelt and Vynorius. Vynorius has moved for judgment on the pleadings with respect to Sunbelt's defense and contractual indemnification and common law indemnity claims. D. 60. In response, Sunbelt moved to amend its third-party complaint to add a claim of contribution against Vynorius, as well as to plead additional facts to support its defense and contractual indemnification and breach of contract claims. D. 63. Sunbelt also moves for partial summary judgment on its defense and contractual indemnification claim. D. 65. For the reasons stated below, the Court ALLOWS in part and DENIES in part Sunbelt's motion to amend its third-party complaint, DENIES Vynorius' motion for judgment on the pleadings, and DENIES Sunbelt's motion for partial summary judgment.

## II. Standard of Review

### A. Motion for Judgment on The Pleadings

Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006) (citation omitted). To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). Because a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage," the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom" in their favor. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (quotations omitted).

On a Rule 12(c) motion, unlike a Rule 12(b) motion, the Court considers the pleadings, including the answer. See Aponte-Torres, 445 F.3d at 54-55. Those assertions in the answer that have not been denied and do not conflict with the assertions in the complaint are taken as true. Santiago v. Bloise, 741 F. Supp. 2d 357, 360 (D. Mass. 2010). In addition, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).

**B. Motion for Summary Judgment**

The Court grants summary judgment where there is no genuine dispute regarding any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that "carries with it the potential to affect the outcome of the suit under the applicable law." García-González v. Puig-Morales, 761 F.3d 81, 87 (1st Cir. 2014) (quoting Newman v. Advanced Tech. Innovation Corp., 749 F.3d 33, 36 (1st Cir. 2014)) (internal quotations omitted). The moving party "bears the burden of demonstrating the absence of a genuine issue of material fact." Rosciti v. Ins. Co. of Pa., 659 F.3d 92, 96 (1st Cir. 2011) (internal quotation omitted). Once that burden is met, the non-moving party may not rest on the allegations or denials in his pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but, "with respect to each issue on which [he] would bear the burden of proof at trial," must "demonstrate that a trier of fact could reasonably resolve that issue in [his] favor." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citations omitted). The Court views the record in the light most favorable to the non-moving party, "drawing reasonable inferences" in his favor. Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citation omitted). "Conclusory allegations, improbable inferences, and unsupported speculation,"

however, are "insufficient to establish a genuine dispute of fact." Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (citation and internal quotation mark omitted).

## III. Procedural History

The Frosts initiated this action in Suffolk Superior Court against Defendants Sunbelt and Suffolk Construction. D. 1-1. Sunbelt removed the case to this Court on July 26, 2018. D. 1. This Court issued a scheduling order on October 3, 2018, setting the deadline for amending pleadings as February 15, 2019. D. 19 ¶ 2. On January 29, 2019, Sunbelt filed a third-party complaint against Vynorius and Alban Tractor. D. 23. Vynorius answered Sunbelt's third-party complaint on April 12, 2019. D. 44.

On June 1, 2020, Vynorius moved for judgment on the pleadings. D. 60. In response to this motion, Sunbelt moved to amend its third-party complaint on June 24, 2020. D. 63. A few days later, on June 30, 2020, Sunbelt moved for partial summary judgment against Vynorius. D. 65.

## IV. Factual Background

Unless otherwise indicated, the following summary is based upon the facts as alleged in the Frosts' amended complaint, D. 32, Sunbelt's amended third-party complaint, D. 63-2 at 18-28, and to the extent they are not disputed, the facts contained in Vynorius' answer, D. 44, and the exhibits referenced in these documents. On June 26, 2017, Defendant Suffolk was the general contractor for the preconstruction and construction services at Wynn Casino in Everett, Massachusetts (the "Subject Premises"). D. 32 ¶ 14. On that date, Sunbelt provided a pile driver[1] to Frost's employer, Vynorius for use on the Subject Premises. Id. ¶ 19. Previously, at Sunbelt's request, Alban Tractor repaired the pile driver on September 9, 2015. Id. ¶ 17. The Frosts also

[1] Sunbelt refers to the equipment as a pile cutter. D. 63-2 at 19, ¶ 5.

allege that Sunbelt or Alban Tractor had recently repaired the pile driver. Id. ¶ 21. "On or about June 26, 2017," the pile driver "failed" and crushed Frost's lower abdominal and groin area. Id. ¶ 23. As alleged by Sunbelt, Frost was injured "while attempting to repair the machine." D. 63-1 at 7. Vynorius contends, however, that Frost was "replacing a broken clevis on the outside of the pile cutter when one of the pistons from inside the pile cutter suddenly shot out and hit him." D. 79 at 10; see D. 79-4 at 28-29; 36.

Sunbelt alleges that it rented the pile driver to Vynorius pursuant to Rental Out Agreements ("ROAs"). D. 63-2 ¶ 9; see D. 63-2 at 50-57. The April 21, 2017 ROAs state that a "Customer's rental of Equipment is conditioned upon Customer's agreement with this Contract and all of its terms. Customer's execution of this Contract or taking possession of the Equipment shall be deemed acceptance of the terms herein. All of the terms herein (including on the front side of this Contract) are incorporated into this and all past and future contracts between Sunbelt and Customer upon Customer's receipt of Sunbelt's Equipment under those contracts." D. 63-2 at 52 (Section 2); D. 63-2 at 55 (Section 2). Vynorius did not sign the April 21, 2017 ROAs. See D. 63-2 at 51; D. 63-2 at 54. Vynorius did, however, take possession of the pile driver for use on the construction site. See D. 32 ¶ 19.

The maintenance clause of the April 21, 2017 ROAs state that customers "shall perform routine maintenance on the Equipment, including routine inspections and maintenance of fuel and oil levels, grease, cooling system, water, batteries, cutting edges, and cleaning in accordance with the manufacturer's specifications. All other maintenance or repairs may only be performed by Sunbelt or its agents, but Sunbelt has no responsibility during the Rental Period to inspect or perform any maintenance or repairs unless Customer requests a service call." D. 63-2 at 52 (Section 5); D. 63-2 at 55 (Section 5). The April 21, 2017 ROAs, moreover place liability with

the customer during the rental period and state that "Customer assumes all risk associated with the possession, control or use of the equipment, including but not limited to personal injury . . . whether or not the Customer is at fault." Id. (in ALL CAPS).

The April 21, 2017 ROAs also contain a release and indemnification clause that states that the "customer indemnifies, releases, holds sunbelt harmless and at Sunbelt's request, defends Sunbelt (with counsel approved by Sunbelt), from and against all liabilities, claims, losses, damages and expenses (including attorney's and/or legal fees and expenses) however arising or incurred, relating to any incident, damage to property, injury or death of, any person . . . caused by or connected with the (a) the use, possession or control of the equipment during the rental period or (b) breach of this contract, whether or not caused in part by the active or passive negligence or other fault of any party indemnified herein and any of the foregoing arising or imposed in accordance with the doctrine of strict or absolute liability. . . . customer's indemnification obligations shall survive the expiration or termination of this contract." Id. (section 8 in ALL CAPS). "All of customer's indemnification obligations under this paragraph shall be joint and several." Id.

Prior to the incident at issue here, Sunbelt rented construction equipment to Vynorius pursuant to ROAs that Vynorius did sign. These ROAs contain similar maintenance, customer liability and release and indemnification clauses as the unsigned April 21, 2017 ROAs. See D. 63-2 ¶ 8. For example, on March 23, 2015, Sunbelt rented a pile cutter to Vynorius pursuant to a ROA. Id; D. 63-2 at 39-40. The March 23, 2015 ROA customer liability section states that Vynorius "assumes all risks associated with the possession, custody and operation of and full responsibility for, the equipment, including but not limited to, personal injury, death, rental charges, losses, damages and destruction, including customer transport, loading and unloading."

D. 63-2 at 40 (Section 5 in ALL CAPS). Like the unsigned ROA at issue here, moreover, the March 23, 2015 ROA contains a release and indemnification clause that states that Vynorius indemnifies, releases, and holds Sunbelt harmless for any injuries caused by or connected with the "use, possession or control of the equipment during the rental period" or "breach of this contract." Id. (Section 7 in ALL CAPS). The signed March 23, 2015 ROA also states that the "terms herein are incorporated into this and all future contracts between Sunbelt and Customer upon Customer's receipt of Sunbelt's Equipment under those contracts." Id. (Section 1).

On March 6, 2017, Sunbelt rented two heaters to Vynorius pursuant to two signed ROAs, D. 63-2 ¶ 8. The March 6, 2017 ROAs contain similar language pertaining to customer maintenance, liability, release, and indemnification as the March 23, 2015 ROA and the unsigned April 21, 2017 ROAs at issue here. Compare D. 63-2 at 43-48 with D. 63-2 at 39 and D. 63-2 at 52-55. Like the March 23, 2015 and April 21, 2017 ROAs moreover, the March 6, 2017 ROAs also state that Vynorius' "execution of this Contract or taking possession of the Equipment shall be deemed acceptance of the terms herein. All of the terms herein (including on the front side of this Contract) are incorporated into this and all past and future contracts between Sunbelt and Customer upon Customer's receipt of Sunbelt's Equipment under those contracts." D. 63-2 at 44 (Section 2).

## V. Discussion

### A. Sunbelt's Motion to Amend Its Third-Party Complaint Is Denied in Part and Allowed in Part

#### 1. *Sunbelt's Proposed Amendments*

In its motion to amend, Sunbelt seeks to include: (1) additional facts to support its assertion that the April 21, 2017 ROAs apply to Vynorius, specifically language from the indemnification and release clause of the unsigned April 21, 2017 ROAs (stating that taking possession of the

Equipment shall be deemed acceptance of the terms herein) and language from the prior ROAs between the parties; (2) a claim for contribution against Vynorius and additional language from the ROAs to support same; and (3) additional, alleged facts that Frost was injured while attempting to repair the pile driver at issue in breach of the parties' ROA. D. 63-1 at 1. Vynorius argues that Sunbelt cannot amend its third-party complaint because Sunbelt cannot establish that it was diligent in seeking amendment and that any attempt to amend its complaint is futile. D. 79.

*2. The April 21, 2017 ROAs are Already Incorporated Within Sunbelt's Third-Party Complaint*

First, Sunbelt argues that the Court should allow it to amend its third-party complaint to include language from the April 21, 2017 ROAs. D. 63-1 at 5. Specifically, Sunbelt seeks to include that the ROA states that "taking possession of the Equipment shall be deemed acceptance of the terms herein. All of the terms herein (including on the front side of his Contract) are incorporated into this and all past and future contracts between Sunbelt and Customer upon Customer's receipt of Sunbelt's Equipment under those contracts." D. 63-2 at 52; D. 63-2 at 55. Vynorius argues that Sunbelt may not amend its complaint to include this language because "[t]here is no way that Sunbelt has only now realized that the rental document for the pile cutter in question was not signed by Vynorius." D. 79 at 6.

Even as unamended in this respect, the Court, however, "must consider the complaint in its entirety . . . in particular, documents incorporated into the complaint by reference." Tellabs, Inc v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Here, Sunbelt incorporated the April 21, 2017 ROA into its original third-party complaint by reference. See D. 23 ¶¶ 7-9. Thus, the Court can consider the April 21, 2017 ROAs as a part of that pleading. Thus, an amendment to include the April 21, 2017 ROAs is not necessary and the Court denies Sunbelt's motion to amend its complaint to cite specific language from the ROAs as moot.

*3. Sunbelt's Prior ROAs*

Sunbelt also seeks to include references to its prior ROAs, not at issue in this case "to demonstrate why the ROA was a valid, binding contract for the lease of the pile driver." D. 63-1 at 4. The Court also denies this portion of the motion to amend as unnecessary. Allegations in a complaint must include well-pleaded facts. Pension Trust v. J. Jill, Inc., 360 F. Supp. 3d 17, 22 (D. Mass. 2018). Whether the April 21, 2017 ROAs are enforceable based upon a prior course of dealings, however, is not a factual allegation, but instead a legal conclusion. See E.H. Ashley & Co., Inc. v. Wells Fargo Alarm Services, 907 F.2d 1274, 1277 (1st Cir. 1990) (noting that district court determination that contract is enforceable is a legal conclusion). Accordingly, given that the prior ROAs do not present any additional factual allegations relevant to the claims asserted in this case, the Court shall deny the motion to amend. See Podkulski v. Doe, No. 11cv102-JL, 2014 WL 5662780, at *2 (D. N.H. 2014) (denying motion to amend where allegations were legal conclusions that failed to state any claim for relief); Hofland v. LaHaye, No. CV 09-172-B-W, 2010 WL 231737, at *2 (D. Maine. Jan 14. 2010) (affirming magistrate judge's denial of motion to amend where amendments contained conclusory allegations). The parties' course of dealings, however, are properly before the Court as to whether the ROAs constitute a valid and enforceable contract. Having denied this portion of the motion to amend as unnecessary, the Court does not reach Vynorius's further bases for opposing this portion of the motion.

*4. Sunbelt's Proposed Contribution Claim*

Sunbelt argues that the Court should allow it to amend its claim to include a contribution claim because Vynorius is not prejudiced where "adding a contribution claim does not require Vynorius to defend a new theory of liability." D 63-1 at 6. Whether Vynorius would be unduly prejudiced by the addition of a new claim however is not the focal point of the Court's inquiry.

Instead, the "standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).

Amendments to pleadings that occur after the deadline of a scheduling order, "may be modified only upon a showing of 'good cause.'" U.S. ex rel. D'Agnostino v. EV3, Inc., 802 F.3d 188, 192 (1st Cir. 2015) (citations omitted). Here, the Court set the deadline for amending pleadings to February 15, 2019. D. 19. Sunbelt did not file its proposed amended complaint until more than four months after that deadline on June 24, 2020. D. 63.

Sunbelt in its motion to amend relies incorrectly on the more liberal Rule 15(a) standard for amending a complaint. See D. 63-1 at 3. Once a scheduling order is in place, however, the liberal Rule 15(a) standard is replaced by the more demanding good cause standard of Fed. R. Civ. P. 16(b). O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154-55 (1st Cir. 2004). Under this good cause standard, the Court focuses on the diligence of the movant. Id.

Given the sequence of events, particularly the timing of the motion to amend on the heels of Vynorius's motion for judgment on the pleadings, the Court does not conclude that Sunbelt failed to act diligently as to its claim for contribution. Although the contribution claim is based on language from the unsigned ROAs, the dispute about whether such claim was barred by Massachusetts Workers Compensation Act, came to the foreground when Sunbelt invoked it to defeat all of Sunbelt's claims in its motion for judgment on the pleadings, D. 60-1 at 1, and in defending same, Sunbelt recognized that under the ROAs, if effective, Vynorius had waived same, D. 63-1 at 6. Although when a motion to amend comes after the Court's deadline for doing so, the focus is upon the diligence (or lack thereof) of the movant, it does not make prejudice to the non-movant irrelevant in the Court's determination. O'Connell, 357 F.3d at 155 (noting that

"prejudice" remains a relevant, but not dominant, consideration). Where Sunbelt has given a plausible reasons for this late amendment and where the Court finds no prejudice to Vynorius given Sunbelt's prior claims, including a claim for common law indemnification, D. 63-1 at 6, and there's no suggestion that the addition of this claim will prolong this litigation, the Court allows this portion of the motion to amend.

*5. It is Not Futile to Amend as to Additional Facts Related to Sunbelt's Breach of Contract Claim*

Finally, Sunbelt seeks to amend its third-party complaint to include that Frost was injured while attempting to repair the pile driver in breach of the parties' April 21, 2017 ROAs. This, according to Sunbelt, was a breach of contract because the April 21, 2017 ROAs state that the customer "shall perform routine maintenance on the Equipment," but all other maintenance or repairs may only be performed by Sunbelt or its agents. D. 63-2 at 52; D. 63-2 at 55.

Here, Sunbelt has provided an explanation for its delay in bringing this claim. It asserts that it did not learn until discovery that Frost was injured while attempting to repair the pile driver. D. 63-1 at 7. Vynorius does not appear to dispute that this particular information was a new discovery, see D. 79 at 7, but that it is futile to amend in this regard since discovery has revealed Frost's injury did result from this repair. D. 79 at 7-8; see D. 79-1 at 41 (supervisor's accident investigation form). This is a factual matter (as is whether Frost's repair work was "routine maintenance"), that appears disputed, which the Court cannot resolve at this juncture. Given that the Court cannot say that adding these additional allegations is futile, the Court allows Sunbelt to amend its third-party complaint to include these facts.[2]

[2] Vynorius also argues that any amendment to Sunbelt's third-party complaint is futile because the "Massachusetts Workers Compensation Act bars third-party claims against employers who have compensated, or are compensating, their employees for their work-related injuries." D. 79 at 8. This argument is the same one Vynorius asserts in its motion for judgment on the

**B. Vynorius' Motion for Judgment on the Pleadings Is Denied**

Vynorius moves for a judgment on the pleadings with respect to Sunbelt's defense and contractual indemnification and common law indemnity claim. D. 60. Vynorius argues that: (1) the Massachusetts Workers Compensation Act ("MWCA") bars claims against it as Frost's employer; (2) no express indemnity agreement exists; (3) no special factors exist for the implication of an indemnity agreement; and (4) Sunbelt's common law indemnification claim is invalid.

*1. Defense and Contractual Indemnification (Count III)- MWCA And Express Indemnity Agreement*

Vynorius alleges that as Frost's employer it is immune from Sunbelt's third-party lawsuit. The MWCA "ordinarily bars a third party sued by the employee from recovering against the negligent employer who has paid workers' compensation." Larkin v. Ralph O. Porter, Inc., 405 Mass. 179, 181 (1989) (citation omitted). "Any right of a third-party tortfeasor to recover indemnity from an employer who paid workmen's compensation benefits to an injured employee, must stem, if at all, from an express or implied contract of indemnity or from an obligation implied from the relationship of the parties." Id. (quoting Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 37 (1983)). "Under Massachusetts law,[3] a contract-based right to indemnification exists only

pleadings, D. 60, and its opposition to Sunbelt's motion for partial summary judgment, D. 78. Thus, the Court addresses it below.

[3] Generally, Massachusetts courts will give effect to a choice-of-law clause included in the contract itself. See, e.g., Morris v. Watsco, Inc., 385 Mass. 672, 674 (1982)(holding that "Massachusetts law has recognized, within reason, the right of the parties to a transaction to select the law governing their relationship"). Although the ROAs state that they should be governed by and construed in accordance with the laws of South Carolina, D. 63-2 at 55, both parties posit that Massachusetts law should apply. See D. 65-1 at 6 and D. 78 at 9. The Court notes, moreover, that there appears to be no significant difference between Massachusetts law and South Carolina law regarding contract formation. Compare Conte v. Bank of Am., N.A., 52 F. Supp. 3d 265, 268 (D. Mass. 2014) (holding that essential elements of a valid contract are offer, acceptance and consideration) with Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. 1997) (same).

if there is a binding contract between indemnitor and indemnitee in which such right is expressed or from which it can be fairly implied." Franklin v. Gen. Elec. Co., No. CIV. A. 95-1079, 1997 WL 401560, at *2 (Mass. Super. Ct. Jul. 2, 1997) (citing Kelly v. Dimeo, Inc., 31 Mass. App. Ct. 626, 628 (1991)).

Vynorius argues that in accordance with Franklin, there is no express indemnification agreement because the ROA is unsigned. D. 60-1 at 4. In Franklin, the court held that there was no mutual agreement to the indemnification provision where the agreement was unsigned, defendant provided a sworn testimony that it had never received the contract, and defendant denied having express knowledge, oral or written of the indemnity provision contained in the Agreement. Franklin, 1997 WL 401560, at *2. Here, the ROA is unsigned and Vynorius "denies it entered into a contract" with Sunbelt. D. 44 at 4. The indemnification provision at issue here, however, explicitly states that "taking possession of the Equipment shall be deemed acceptance of the terms herein." D. 63-2 at 52; D. 63-2 at 55. There is no dispute that Vynorius accepted the pile driver at issue, and thus under the express terms of the ROAs, it accepted the agreement, including the indemnification provision clause.

Vynorius alleges that the court's ruling in Franklin prevents the Court from concluding that performance under the contract creates an indemnification obligation. In Franklin, however, the indemnification provision did not expressly state that taking possession of the Equipment was an acceptance of the terms. Instead, plaintiff in Franklin argued that performance under the contract created an implied right of contractual indemnity. Franklin, 1997 WL 401560, at *3 (stating that "[l]acking any express language of indemnity in any documents which were sent to and accepted by defendant, the plaintiffs attempt to rely on an indemnity implied by the circumstances"). Here, as alleged, Vynorius' acceptance of the pile driver created an express right of contractual

indemnity, and thus the holding in Franklin pertaining to implied rights of indemnity is inapplicable.[4] Given that the unsigned ROAs explicitly state that possession of the equipment constitutes a method of acceptance, Sunbelt has sufficiently alleged that its terms are binding. See Polaroid Corp. v. Rollins Environmental Services (NJ), Inc., 416 Mass. 684, 690-91 (1993) (holding that "when an offeree accepts the offeror's services without expressing any objection to the offer's essential terms, the offeree has manifested assent to those terms). The Court, therefore, viewing the facts contained in the pleadings in the light most favorable to Sunbelt and drawing all reasonable inferences in its favor, concludes that Sunbelt has pled sufficient facts to state a claim that Vynorius, by accepting the pile driver, was bound to the terms of the ROAs, including the indemnification clause. Accordingly, the Court denies Vynorius's motion as to this claim.

*2. Sunbelt's Common Law Indemnity Claim (Count IV)*

Vynorius argues that Sunbelt's common law indemnity claim fails because Frost's injuries were caused by Sunbelt's pile driver. D. 60-1 at 8. Under common law, the general rule for indemnification is that "a person who negligently causes injury to a third person is not entitled to indemnification from another person who also negligently caused that injury." Rathbun v. Western Massachusetts Elec. Co., 395 Mass. 361, 364 (1985). An exception exists, however, "where the person seeking indemnification did not join in the negligent act of another but was exposed to liability because of that negligent act." Id. In such a case, common-law principles "shift the whole loss upon the more guilty of the two tortfeasors." Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth., 693 F.2d 1, 3 (1st Cir. 1982). Common-law indemnification is available

[4] Given this ruling, the Court does not reach Sunbelt's further argument that the parties' course of dealings establishes that Vynorius accepted and was bound by the ROAs, D. 64 at 8.

"only when the party seeking it was merely passively negligent while the would-be indemnitor was actively at fault." Id (citation omitted).

As alleged by the Frosts, Sunbelt acted negligently when it failed to "properly inspect/repair the pile driver, among other things, in order to verify that the pile driver was fit for use and was safe to those who would be using the pile driver" and when it "departed from custom and accepted standard by leaving and failing to warn of the pile driver's defective condition." D. 32 ¶¶ 41-42. Sunbelt, however, states that it "did not participate in the negligent acts and/or omissions" and that any damage Mr. Frost suffered was "solely caused by the negligent acts or omissions of Vynorius." D. 63-2 at 26, ¶ 42. Under the standards in Rule 12(c), the Court must accept the factual allegations in Sunbelt's complaint and draw reasonable inferences in its favor. Pérez-Acevedo, 520 F.3d at 29. Given the dispute between Sunbelt and Frost regarding who caused the injury, the Court also denies Vynorius's motion for judgment on the pleadings as to Sunbelt's common law indemnity claim. See Hernandez v. City of Boston, 277 F. Supp. 3d 176, 180 (D. Mass. 2017) (denying motion to dismiss common law indemnity claim under similar Rule 12(b)(6) standard where plaintiff alleged that party seeking indemnification was negligent and party seeking indemnification disputed same).

**C. Sunbelt's Motion for Partial Summary Judgment Against Vynorius Is Denied Without Prejudice**

Sunbelt seeks partial summary judgment on its defense and contractual indemnification claim (Count III) based on the release and indemnification provision of the ROAs at issue. D. 65. Sunbelt contends that Vynorius is contractually obligated under the April 21, 2017 ROAs to indemnify it against the claims the Frosts assert against Sunbelt. D. 65-1 at 1. Sunbelt's motion must be denied, however, because it has failed to submit a statement of undisputed material facts. "Motions for summary judgment, shall include a concise statement of the material facts of record

as to which the moving party contends that there is no genuine issue to be tried with page references to affidavits, depositions and other documentation." D. Mass. L. R. 56.1. "Failure to include such a statement constitutes grounds for denial of the motion." Id. While Sunbelt's brief contains a facts section which recounts the allegations in the complaint and cites to several affidavits, D. 65-1 at 3, "it does not purport to recount uncontroverted facts." Bonbon v. Elite Guardian Solutions Inc, No. 17-cv-10275-ADB, 2019 WL 3290993, at *1 (D. Mass. Jul. 22, 2019). For this reason, the Court denies Sunbelt's motion for summary judgment without prejudice.

## VI. Conclusion

For the foregoing reasons, the Court rules as follows: (1) the Court DENIES in part Sunbelt's motion to amend, D. 63 in so far as the amendment seeks to include language from the April 21, 2017 ROAs at issue here and the prior ROAs; and ALLOWS it in so far as it seeks to add a contribution claim and include additional facts in support of its breach of contract claim; (2) DENIES Vynorius motion for judgment on the pleadings, D. 60; and (3) DENIES Sunbelt's motion for partial summary judgment as to its defense and contractual indemnification claim against Vynorius, D. 65 without prejudice.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge