UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ERIC FROST and DAWN FROST,<br><br>Plaintiffs,<br><br>v.<br><br>SUFFOLK CONSTRUCTION COMPANY, INC., SUNBELT RENTALS, INC., and ALBAN TRACTOR COMPANY, INC.,<br><br>Defendants. | Case No. 18-cv-11578-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                    **November 10, 2021**

**I.   Introduction**

Plaintiffs Eric and Dawn Frost ("Plaintiffs") have filed this lawsuit against Defendants Suffolk Construction Company, Inc. ("Suffolk"), Sunbelt Rentals, Inc. ("Sunbelt"), and Alban Tractor Company, Inc. ("Alban") (collectively, "Defendants") alleging negligence against Suffolk, Sunbelt and Alban (Counts I-II, VII, respectively), breach of implied warranty against Sunbelt (Count III) and loss of consortium against Suffolk, Sunbelt and Alban (Counts IV-VI, respectively) related to injuries Eric Frost sustained from a pile driver failure at a construction site. D. 32. Suffolk has moved for summary judgment on Plaintiffs' negligence claim (Count I). D. 96. Alban has moved for summary judgment on Plaintiffs' claims brought against it (Counts VI and VII) and on Sunbelt's third-party complaint for indemnity and contribution, asserting a lack of personal

1

jurisdiction. D. 100. Sunbelt has also moved to strike an affidavit filed in support of Alban's motion for summary judgment. D. 114. For the reasons stated below, the Court DENIES the motions for summary judgment, D. 96; D. 100, and DENIES the motion to strike, D. 114.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

The following facts are drawn from the parties' submissions of material facts and documents cited therein, D. 98; D. 103; D. 108, and the parties' responses to same, D. 106; D. 109; D. 112; D. 116, and are undisputed unless otherwise noted.

A.     **2017 Construction Site Injuries**

Eric Frost ("Frost") worked as a mechanic for Vynorius, a subcontractor performing pile driving and cutting work for Suffolk, the general contractor on the Wynn Casino Project ("Project"). D. 98 ¶¶ 1–3; D. 109 ¶¶ 1–3; D. 108 ¶ 4; D. 116 ¶ 4. In June 2017, Vynorius sent Frost to repair a pile cutter it was using at the Project. D. 98 ¶ 4; D. 109 ¶ 4. Sunbelt rented the pile cutter to Vynorius for use on the Project. D. 98 ¶ 5; D. 109 ¶ 5. Frost was the mechanic in charge of the repair, made all mechanical decisions regarding the repair and did not have any conversations with anyone at Suffolk regarding the repair at the time of the repair. D. 98 ¶¶ 7–9; D. 109 ¶¶ 7–9. While performing the repair, the pile cutter malfunctioned and ejected a piston, striking and injuring Frost. D. 98 ¶ 10; D. 109 ¶ 10. Such a malfunction had not occurred before. D. 98 ¶¶ 21–22; D. 109 ¶¶ 21–22.

Suffolk provided for the safety of its employees and its subcontractors' employees. D. 108 ¶ 10; D. 116 ¶ 10. Suffolk had multiple safety managers and other safety personnel on site at the Project. D. 108 ¶ 12; D. 116 ¶ 12. Suffolk superintendents were placed in various locations around the site to oversee subcontractor work, ensure subcontractor safety and enforce safety protocols. D. 108 ¶ 13; D. 116 ¶ 13. Suffolk held safety meetings with its subcontractors, before and during construction. D. 108 ¶¶ 16–17; D. 116 ¶¶ 16–17. Suffolk created and enforced a safety plan for the Project and required subcontractors to submit their own safety plans, which Suffolk enforced. D. 108 ¶¶ 18–20; D. 116 ¶¶ 18–20. Suffolk required subcontractors, like Vynorius, to submit an Activity Hazard Analysis ("AHA") before work began, and daily Pre-Task Plan ("PTP") and Job Hazard Analysis ("JHA") reports (collectively "Safety Reports"), which detailed the risks involved in specific tasks to be performed. D. 108 ¶¶ 21–24, 26; D. 116 ¶¶ 21–24, 26. The parties dispute

whether Safety Reports were provided specific to Frost's repair of the pile driver.  D. 108 ¶ 27; D. 116 ¶¶ 27.

### B. Prior Repair of Pile Cutter

Alban, a construction equipment company based in Baltimore, Maryland, repaired certain components (two rods and two pistons) of the pile cutter for Sunbelt, at Alban's facility in Virginia, after Sunbelt was unable to repair the pile cutter themselves.  D. 98 ¶ 6; D. 109 ¶ 6; D. 103 ¶¶ 1–2, 10–11; D. 106 ¶¶ 1–2, 10–11; D. 112 ¶¶ 1–2, 10–11.[1]  After Alban completed the repair, it returned the components to Sunbelt at the end of August 2015.  D. 103 ¶¶ 16, 19; D. 106 ¶¶ 16, 19; D. 112 ¶¶ 16, 19.  Alban did not perform additional work on the pile cutter after August 2015, and Sunbelt continued to rent the pile cutter to various construction companies, including Vynorius, up until the June 2017 incident.  D. 103 ¶¶ 20–24; D. 106 ¶¶ 20–24; D. 112 ¶¶ 20–24.

## IV. Procedural History

Plaintiffs filed suit against Suffolk, Sunbelt and Alban in Suffolk Superior Court.  D. 1; D. 1-1.  Sunbelt removed the action to this Court.  D. 1.  Suffolk and Sunbelt filed crossclaims against each other.  D. 6; D. 12.  Sunbelt filed a third-party complaint against Alban and Vynorius.  D. 23.  Plaintiffs amended their complaint.  D. 32.  Alban filed a crossclaim against Suffolk and Sunbelt.  D. 41.  Vynorius moved for judgment on the pleadings with respect to Sunbelt's indemnity claims.  D. 60.  In response, Sunbelt moved to amend its third-party complaint and for partial summary

---

[1] Sunbelt moved to strike the affidavit of Alban's counsel filed in support of its motion for summary judgment, and those assertions in Alban's LR 56.1 Statement of Facts ("SOF") citing to the affidavit, as not based upon personal knowledge.  D. 114; D. 103-9.  Alban concedes that the affidavit contains its counsel's recollection of a deposition at which she was present but for which Alban had not yet received a copy of the transcript, D. 119 at 3, and has since amended its SOF to cite to relevant portions of the deposition transcript, see D. 117-14.  Moreover, the Court has not considered counsel's affidavit in resolving Alban's motion for summary judgment.  Accordingly, Sunbelt's motion to strike is DENIED as moot.  D. 114.

judgment. D. 63; D. 65. The Court allowed in part and denied in part Sunbelt's motion to amend, denied Sunbelt's motion for partial summary judgment, and denied Vynorius' motion for judgment on the pleadings. D. 84. The parties stipulated to dismissal of Vynorius as a third-party defendant. D. 94. Suffolk and Alban have now moved for summary judgment, D. 96; D. 100, and Sunbelt has moved to strike an affidavit filed in support of Alban's motion for summary judgment, D. 114. The Court heard the parties on the pending motions and took these matters under advisement. D. 124.

V.   Discussion

    A.   **Suffolk's Motion for Summary Judgment**

Suffolk has moved for summary judgment on Plaintiffs' negligence claim (Count I). D. 96. "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 447 Mass. 141, 146 (2006). For the following reasons, the Court denies Suffolk's motion.

As a preliminary matter, Suffolk appears to argue that Plaintiffs cannot succeed on their negligence claim because, to the extent Plaintiffs allege that the pile cutter was defective, such defect was not created by or known to Suffolk. D. 97 at 4. Plaintiffs' negligence claim against Suffolk, however, does not sound in defect; such a claim is only brought against Sunbelt. See D. 32 at 5–6. Instead, Plaintiffs allege that Suffolk negligently allowed an unreasonably dangerous condition and materials to be used at the Project (i.e., the pile cutter) and that Suffolk negligently managed or controlled same. D. 32 ¶¶ 31–32.

Next, Suffolk argues that it owed no duty to Frost. First, Suffolk contends that it owed no duty to Frost because his injuries were not reasonably foreseeable. D. 97 at 5–7. Suffolk relies

5

upon cases where, in other contexts, the existence of legal duty turned on foreseeability of injury. See id. (citing McGuiggan v. New England Tel. & Tel., 398 Mass. 152, 157–61 (1986) (explaining duty of care for social host liability); Schofield v. Merrill, 386 Mass. 244, 248 (1982) (explaining duty of care for landowner in trespass cases); Poskus v. Lombardo's of Randolph, Inc., 423 Mass. 637, 639 (1996) (explaining duty of care for negligent operation of stolen vehicle); Coughlin v. Titus & Bean Graphics, Inc., 54 Mass. App. Ct. 633, 639 (2002) (explaining duty of care for employer in negligent hiring); Glick v. Prince Italian Foods of Saugus, Inc., 25 Mass. App. Ct. 901, 902 (1987) (explaining duty of care for restaurant when out-of-control car crashed into it)). Whether a general contractor owes a duty to its subcontractor, however, depends on whether "the general contractor 'retains the right to control the work in any of its aspects, including the right to initiate and maintain safety measures and programs.'" Lewis v. Dimeo Constr. Co., No. 14-cv-10492-IT, 2017 WL 651946, at *1–2 (D. Mass. Feb. 16, 2017) (quoting Corsetti v. Stone Co., 396 Mass. 1 (1985)). Such an inquiry is fact-based (and thus typically a jury question), and summary judgment is proper only if the undisputed record shows an absence of any meaningful control. Id.; Kostrzewa v. Suffolk Constr. Co., 73 Mass. App. Ct. 377, 379 (2008). Suffolk asserts that it did not retain or exercise control over the pile cutter itself, or that the record is devoid of evidence for same. D. 97 at 8–9. The question of whether Suffolk owed a duty of care to Frost, however, turns upon whether Suffolk retained some control over subcontractor safety, which may encompass either equipment repairs or the presence of same at the Project, not control over the specific piece of equipment. See Kostrzewa, 73 Mass. App. Ct. at 379–80 (reversing summary judgment to Suffolk where evidence indicated it controlled safety aspects at the project).

Here, the record shows that Suffolk did maintain at least some control over the safety of its subcontractors, including having safety personnel oversee subcontractor work and ensure

subcontractor safety, holding safety meetings with subcontractors, and requiring and enforcing subcontractor safety plans. See D. 108 ¶ 10, 12–13, 16–20, 22–24, 26; D. 116 ¶ 10, 12–13, 16–20, 22–24, 26; Kostrzewa, 73 Mass. App. Ct. at 381 (quoting Corsetti, 986 Mass. at 9–10) (explaining that if general contractor "retain[s] control over any part [of the work] it had a duty to those working on same"); Lewis, 2017 WL 651946, at *3 (rejecting argument on summary judgment that general contractor owed no duty where, among other responsibilities, evidence showed its employees were "actively on-site conducting walk-throughs, safety talks, and safety briefings");[2] Dilaveris v. W.T. Rich Co., 424 Mass. 9, 12–13 (1996) (concluding that general contractor owed duty to subcontractor when it had "some responsibility for safety," which was an "opportunity to stop or prevent the use of unsafe [equipment]" and "failure to do so makes the issue of [the general contractor's] control and negligence questions for the jury"); Hathaway v. Massachusetts Port Auth., 78 Mass. App. Ct. 1106 (2010) (concluding same based on contractor's ability to stop work if subcontractor failed to follow safety). The record remains disputed at least as to whether Suffolk ensured the existence of, or enforced, Safety Plans with respect to the pile cutter and its repair. See D. 108 ¶ 27; D. 116 ¶¶ 27. Finally, as discussed above, Plaintiffs allege

---

[2] Suffolk attempts in its reply to distinguish these two cases. First, Suffolk asserts that in Lewis, the court there denied summary judgment "on the grounds that there was evidence demonstrating that the nail gun had been potentially malfunctioning for days," but here there is no evidence "that the subject pile cutter malfunctioned at any time prior to the Plaintiff's incident." See D. 115 at 5. Such argument, as the court made clear, addressed the sufficiency of facts to show causation, not duty. Lewis, 2017 WL 651946, at *3. Suffolk's attempt to distinguish Kostrzewa similarly conflates the negligence elements. See D. 115 at 5. Suffolk points out that in Kostrzewa, "the general contractor either knew or should have known that . . . scaffolding was not being used safely," but in this case "there is no evidence that Suffolk knew or should have known of the alleged latent defect within the subject pile cutter." Id. The court considered these facts in its breach of duty analysis. Kostrzewa, 73 Mass. App. Ct. at 382 (2008). Here, the Court concludes that Suffolk's motion for summary judgment, however, turns on the issue of duty and the record remains disputed as to the degree of Suffolk's control over subcontractor safety, thereby precluding summary judgment in its favor.

that Suffolk negligently allowed and managed the pile driver, an "unreasonably dangerous condition" at the Project, not that Suffolk was negligent in repairing the pile cutter. See D. 32 ¶¶ 31–32; Easler v. Delta Air Lines, Inc., 820 F. Supp. 2d 251, 253 (D. Mass. 2011) (distinguishing, for existence of legal duty, between control over workspace and work to be done on equipment itself).

Accordingly, the Court DENIES Suffolk's motion for summary judgment.

### B.     Alban's Motion for Summary Judgment

Alban moves for summary judgment, asserting that the Court lacks personal jurisdiction over it. D. 102 at 1. Plaintiffs and Sunbelt counter that Alban has forfeited its personal jurisdiction defense by failing to raise it until this motion, but participating in this litigation since March 2019. D. 104 at 3–4; D. 111 at 6–7.

Even if, as here, a party raises "lack of personal jurisdiction as an affirmative defense in its answer to the complaint . . . 'the party's subsequent conduct may in some circumstances result in a forfeiture of that defense.'" Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 97 (D. Mass. 2015) (quoting American Intern. Ins. Co. v. Robert Seuffer GMBH & Co., 468 Mass. 109 (2014)). Courts conduct a fact-specific inquiry to determine whether such defense is forfeited, id., and look to delay between when a party first asserts lack of personal jurisdiction in a responsive pleading and the extent to which a party participates in the litigation, including appearance at court hearings and discovery. See Plunkett v. Valhalla Inv. Servs., Inc., 409 F. Supp. 2d 39, 42 (D. Mass. 2006) (concluding that personal jurisdiction defense was forfeited when party waited thirteen months between responsive pleading and asserting defense, and in the interim "1) participated in a scheduling conference and engaged in a colloquy with the Court with respect to the nature of the case, 2) conducted discovery, 3) consented to Alternative Dispute Resolution, 4) entered into a

stipulation and protective order with the plaintiff and 5) moved the Court to allow its Ohio counsel to appear pro hac vice"); Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999) (noting that length of delay in raising personal jurisdiction defense "provides the context in which to assess the significance of the defendant's conduct, both the litigation activity that occurred and the opportunities to litigate the jurisdictional issue that were forgone"); Jose Moura, Sr., et al., v. Barbara Cannon, et al., No. 17-cv-40166-TSH, 2021 WL 4422964, at *3–4 (D. Mass. Sept. 27, 2021) (concluding personal jurisdiction defense was forfeited when party waited nearly two years to assert personal jurisdiction defense after raising it in an answer, and meanwhile participated in scheduling or status conferences, submitted various motions to extend deadlines, responded to interrogatories, requests for production, and requests for admissions, retained experts, and participated in or defended thirteen depositions); McDermott v. FedEx Ground Sys., Inc., 520 F. Supp. 2d 254, 257 (D. Mass. 2007) (citing Plunkett with approval but concluding that personal jurisdiction defense was not waived when party "demonstrated no delay and moved for dismissal reasonably quickly after answering the [c]omplaint" without substantive engagement in the litigation between the two).

Although Alban raised lack of personal jurisdiction as a defense earlier in this case, it has not sought dismissal on this basis until recently and, in the two-year interim, substantively participated in litigation. Here, Alban answered Sunbelt's third-party complaint on March 25, 2019, which asserted a lack of personal jurisdiction. D. 35 at 5. On April 4, 2019, Alban answered Plaintiffs' amended complaint, asserting a lack of personal jurisdiction, as well as cross claims against Suffolk and Sunbelt for contribution and indemnity, which included a jury demand. D. 41 at 9, 13–15. Alban filed its summary judgment motion, based upon a lack of personal jurisdiction, on August 13, 2021, twenty-eight months after answering the amended complaint. See D. 100.

Alban never moved to dismiss for lack of personal jurisdiction. See Hamilton, 197 F.3d at 61–62 (concluding that party forfeited personal jurisdiction in part because it "participated in pretrial proceedings but never moved to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer"). Alban contends that it was unable to file its summary judgment motion asserting a personal jurisdiction defense without the deposition testimony of Bruce Reiswitz, a branch manager at Sunbelt who transacted with Alban to repair the pile cutter components, and which did not occur until August 2021. See D. 117 at 2–3. As an initial matter, Alban could have "precipitate[d]" jurisdictional discovery by filing a motion to dismiss, leading to "a prompt resolution of the issue," before participating in this litigation for over two years. Hamilton, 197 F.3d at 61-62 (explaining that on motion to dismiss for lack of personal jurisdiction, courts evaluate sufficiency of plaintiffs' evidence alleging existence of same and consider uncontradicted facts proffered by defendant). Second, the information in support of Alban's current motion, like its principal place of business, the location of the pile cutter repair, and its business contacts with Massachusetts was uniquely in its control without the need for Reiswitz's testimony. See, e.g., D. 103 ¶ 2 (establishing Alban's principal place of business by citing to affidavit of its own employee), ¶ 17 (establishing location of repair, citing to same), ¶¶ 29–31 (establishing lack of business relationship or previous transactions with Massachusetts, citing to same). Additionally, to the extent Alban now relies upon Reiswitz's deposition transcript excerpts, the Court cannot glean any new information in these excerpts that bears on these jurisdictional issues not already known to Alban. D. 117-14 at 9–33.

Moreover, Alban participated in all aspects of the litigation for two-plus years, beyond the conduct of what other courts have considered to constitute a forfeiture. See Plunkett, 409 F. Supp. 2d at 42; Jose Moura, Sr., et al., 2021 WL 4422964, at *3–4. Among other things, Alban joined

10

several motions to extend time for discovery-related matters, see D. 49; D. 57; D. 83; D. 90; propounded written discovery upon all other parties and responded to same, including requests for production, requests for admission and interrogatories, D. 112 ¶ 43; D. 118 ¶ 43; D. 105-4; D. 105-5; D. 111-7; served at least seventy-eight subpoenas and notices of deposition, D. 112 ¶ 44; D. 118 ¶ 44; D. 105-3; D. 105-6; D. 111-8; attended and participated in sixteen depositions, D. 112 ¶ 45; D. 118 ¶ 45; D. 105-8; sought the release of Plaintiffs' medical records, D. 112 ¶ 46; D. 118 ¶ 46; D. 111-9; participated in two inspections of the pile cutter components, D. 112 ¶ 47; D. 118 ¶ 47; D. 111-10; and served an expert disclosure on all parties, D. 105-10.  Given this course of conduct, Alban has forfeited its personal jurisdiction defense and the Court need not reach the merits of Alban's motion.

## VI. Conclusion

For the foregoing reasons, the Court DENIES the motions for summary judgment, D. 96; D. 100, and DENIES the motion to strike, D. 114.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge